IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| EZEKIEL "ZEKE" DAVIS, MEGAN DAVIS, <br><br> *Plaintiffs*, <br><br> v. <br><br> KAESER COMPRESSORS, INC., PLUMETTAZ AMERICA, CORP., DIXON VALVE & COUPLING COMPANY, LLC, <br><br> *Defendants*. | § § § § § § § § § § § § § § § CIVIL ACTION NO. 2:22-CV-00058-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Plumettaz America, Corp.'s ("Plumettaz") Motion to Dismiss Design Defect, Manufacturing Defect, and Marketing Defect Claims Asserted in Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 22) ("Plumettaz's Motion") and Defendant Dixon Valve & Coupling Company, LLC's ("Dixon") Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. No. 30) ("Dixon's Motion") (Plumettaz's Motion together with Dixon's Motion, the "Motions"). Having considered the Motions, the subsequent briefing, and for the reasons set forth herein, the Court finds that the Motions should be **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth below.

I.   **BACKGROUND**

On February 22, 2022, Plaintiffs Ezekiel "Zeke" Davis and Megan Davis ("Plaintiffs") filed the above captioned case against Defendant Kaeser Compressors, Inc. ("Kaeser") and Plumettaz. (Dkt. No. 1) (the "Original Complaint"). Plaintiffs' Original Complaint alleged products liability claims against Kaeser and Plumettaz. (*Id.*). On May 2, 2022, Plaintiffs filed an amended complaint adding products liability claims against Dixon. (Dkt. No. 18) (the "Amended

Complaint"). Plumettaz and Dixon (collectively, the "Defendants") separately moved to dismiss certain counts of Plaintiffs' Amended Complaint. (Dkt. Nos. 22, 30). Although Plumettaz and Dixon moved separately, they each argue that Plaintiffs' design defect, manufacturing defect, and marketing defect claims against them should be dismissed. (*Id.*).

## II.  LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Court can dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts well-pleaded facts as true, and views all facts in the light most favorable to the plaintiff, but is not required to accept the plaintiff's legal conclusions as true. *Id.* The Court must limit its review "to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

## III.  DISCUSSION

Defendants argue that Plaintiffs have failed to plead facts sufficient to show the following claims are plausible: (1) Plaintiffs' design defect claims; (2) Plaintiffs' manufacturing defect claims; and (3) Plaintiffs' marketing defect claims. The Court addresses each claim in turn.

Further, Plumettaz argues that Plaintiffs have failed to show that the "Innocent Seller" defense[1] is unavailable, which is also addressed herein.

### A. Plaintiffs' Design Defect Claims[2]

There is no disagreement among the parties that in order to raise a design defect claim under Texas law, Plaintiffs must plead that: (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery. (Dkt. Nos. 22, 29, 30).

Defendants argue that Plaintiffs must show that "there is a defect in the design process of the product such that every unit produced according to that design is unreasonably dangerous." (Dkt. No. 22 ¶ 10). Defendants argue that such involves "a risk-utility analysis that requires consideration of" numerous factors. (*Id.*). Defendants further argue that Plaintiffs "must also set forth plausible facts supporting a safer alternative design." (*Id.* ¶ 11). Defendants contend that "[i]f a plaintiff fails to plead factual allegations that a safer alternative design exists, then they have failed to plead sufficient facts to support a reasonable inference that a defendant is liable for defective design." (*Id.*) (citing *Barragan v. General Motors, LLC*, 4:14-cv-93, 2015 WL 5734842, at *5 (W.D. Tex. Sept. 30, 2015)). Defendants argue that Plaintiffs have "failed to assert what reasonable safer alternative design existed for either the compressor, coupling mechanism, or whip check safety cable that could have been implemented or existed—which is a necessary requirement for a design defect claim." (*Id.* ¶ 12). Defendants also argue that "Plaintiffs have not pled facts

---

[1] As further explained herein, the Fifth Circuit has held that this is not an affirmative defense. The Court therefore is uncomfortable calling it a "defense." However, the parties referred to it as the "Innocent Seller" defense in their briefing, so the Court will do so to avoid confusion, though it does so with a certain lack of comfort.

[2] With the exception of paragraph numbering, Plumettaz and Dixon's Motions are identical with respect to this issue. (*Compare* Dkt. No. 22 ¶¶ 9–12 *with* Dkt. No. 30 ¶¶ 9–13). Accordingly, the Court addresses Defendants' arguments collectively while only citing to Plumettaz's brief in this section.

sufficient to plausibly show that the unidentified defects in the compressor, coupling mechanism, or whip check safety cable caused their alleged injuries." (*Id.*).

Plaintiffs respond that they have pled facts to support their design defect claim and that those facts "closely adher[e] to the elements required to prove a design defect." (Dkt. No. 29 at 6). In support, Plaintiffs rely on this Court's decision in *McMurdy v. Boston Sci. Corp.*, 2:19-cv-301, 2020 WL 6789349 (E.D. Tex. Aug. 28, 2020). Plaintiffs argue that "[t]he facts pled in *McMurdy* follow closely with the required elements of their cause of action, but they were sufficiently plausible that this Court was able to draw a reasonable inference that Plaintiffs were entitled to relief." (Dkt. No. 29 at 6) (citing *McMurdy*, 2020 WL 6789349, at *3). In response to Defendants' complaints about the lack of a risk-utility analysis, Plaintiffs argue that they "lack the information necessary to develop the *Timpte* factors" because discovery has not yet occurred. (Dkt. No. 37 at 5). Further, Plaintiffs argue that "the *Timpte* factors are useful in evaluating whether a particular design was unreasonably dangerous for its particular purpose," but the *Timpte* factors "are not elements of products liability which Plaintiffs must plead as part of their cause of action." (*Id.*) (citing *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009)). With respect to Defendants' argument that Plaintiffs failed to provide a safer alternative design, Plaintiffs argue that they "alleged in their [Amended] Complaint that the coupling could have been designed to be self-securing, or that the pins should have been designed to withstand greater pressure, both of which are alternative designs which were not implemented by Defendant Dixon in designing the coupling and pins." (Dkt. No. 37 at 5) (citing Dkt. No. 18 ¶ 28).

Plaintiffs have alleged a design defect where "the compressor continued to increase pressure after reaching the pressure level set by the [operator]," and such "rendered the compressor unreasonably dangerous as designed." (Dkt. No. 18 ¶ 25). Further, Plaintiffs alleged that "the

4

compressor could have included an automatic shutoff valve to decrease pressure once the desired pressure has been reached, which is a common feature on similar compressors." (*Id.*).  Plaintiffs' Amended Complaint details additional design defects, explains that those design defects rendered the product unreasonably dangerous, and outlines safer alternative designs.  (*Id.* ¶¶ 28–29).  As such, accepting Plaintiffs' allegations as true, Plaintiffs' design defect claim is adequately pled and establishes a plausible claim for relief.  Accordingly, the Court finds that Defendants' Motions should be **DENIED** in this regard.

### B. Plaintiffs' Manufacturing Defect Claims[3]

Dixon argues that "Plaintiffs' manufacturing defect claims simply repeat their design defect claims without providing any allegation describing how the products deviated in any way from their intended design or manufacturing specifications." (Dkt. No. 30 ¶ 15).  Defendants rely on this Court's decision in *McMurdy* to argue that Plaintiffs' "manufacturing defect claims are just their design defect claims regurgitated." (*Id.* ¶ 17).  Defendants argue that, like in *McMurdy*, there is no stated support for how the device deviated from the design.  (*Id.* ¶ 20).  Defendants argue that without the same, Plaintiffs' manufacturing defect claim must fail.  (*Id.*).

Plaintiffs respond that they alleged that "[t]he coupling was not manufactured to proper specifications as the two ends of the coupling were too easily separated." (Dkt. No. 37 at 6). Plaintiffs argue that the "crows' feet" did not fit together properly, which "caus[ed] the mechanism to be difficult to secure but very easy to open." (*Id.*) (citing Dkt. No. 18 ¶ 29).  Plaintiffs argue that this is different from "the same defect that caused the design of the coupling to fail." (Dkt.

---

[3] Plaintiffs' Response to Plumettaz's Motion indicates that they "do not oppose the Court's dismissal of their manufacturing defect claims against Defendant Plumettaz, without prejudice." (Dkt. No. 29 at 1).  No such statement exists in Plaintiffs' Response to Dixon's Motion. (Dkt. No. 37 at 6).  Accordingly, the Court only addresses Dixon's Motion in this section.

No. 37 at 6). Rather, Plaintiffs argue that they have alleged "that the particular coupling implicated by this suit was abnormally easy to open and did not fit together as designed." (*Id.*).

The Court agrees with Plaintiffs. Plaintiffs have provided more than the plaintiffs in *McMurdy*. In *McMurdy*, the Court noted that the plaintiffs simply alleged that the device "deviated materially from Defendants' design and manufacturing specifications in such a manner as to pose unreasonable risks of serious bodily harm to Plaintiff." *McMurdy*, 2020 WL 6789349, at *2. This was insufficient because the plaintiffs in *McMurdy* did "not identify any facts regarding how the [device] surgically implanted in Ms. McMurdy varied from Bard's intended design or manufacturing specifications." *Id.* Here, however, Plaintiffs' Amended Complaint allege multiple specifications that were not met and the resulting defect. (Dkt. No. 18 ¶¶ 29, 32). As one example, Plaintiffs' Amended Complaint states that:

> The coupling was not manufactured to proper specifications as the two ends of the coupling were too easily separated. Specifically, the "crows' feet" did not fit together properly, causing the mechanism to be difficult to secure but very easy to open.

(*Id.* ¶ 29). A manufacturing defect occurs when the product deviates from the manufacturers' specifications or planned output in a manner that makes it unreasonably dangerous. *Am. Tobacco Co., Inc. v. Grinnel*, 951 S.W.2d 420, 434 (Tex. 1997). The quoted section from Plaintiffs' Amended Complaint identifies both the deviation from the manufacturers' specification and the unreasonable danger that resulted from the deviation. Specifically, the quoted allegation identifies a particular specification that was not met: that the "crows' feet" fit together properly so as to not easily separate. The passage also identifies how the product was made unreasonably dangerous: that the mechanism became difficult to secure and easy to open. Plaintiffs have provided more

than the conclusory statement the Court rejected in *McMurdy*. Accordingly, the Court finds that Dixon's Motion should be **DENIED** in this regard.[4]

    C.        **Plaintiffs' Marketing Defect Claims**[5]

Defendants argue that Plaintiffs' marketing defect claims "fail[] due to Plaintiffs' failure to plead any specific facts to support such a marketing defect or failure to warn." (Dkt. No. 22 ¶ 22). Defendants argue that "Plaintiffs do not allege that the compressor, coupling mechanism, and whip check safety cable were rendered unreasonably dangerous because of the failure to warn, but instead that these items were themselves unreasonably dangerous and that Defendant failed to warn Plaintiffs about them." (*Id.* ¶ 24). According to Defendants, "[t]hese allegations are not sufficient" because "Texas courts repeatedly dismiss marketing defect claims when the alleged failure to warn relates solely to the defective manufacturing or design, as opposed to the product's use." (*Id.* ¶ 25) (citing *Barragan*, 2015 WL 5734842, at *6).

Plaintiffs contend that their Amended Complaint correctly sets forth the "failure to warn" standard outlined in *Barragan*. (Dkt. No. 29 at 6). Plaintiffs argue that they applied this standard by alleging that "Defendant PLUMETT failed to adequately warn that the compressor at issue had the potential to overload pressure and uncouple certain hose closure mechanisms which were not manufactured to withstand the pressure created by PLUMETT's machine." (*Id.* at 7) (citing Dkt. No. 18 ¶ 26).

The Court agrees with Defendants. Both parties rely on the standard recited in *Barragan*. *Barragan* found that:

> A marketing defect claim and a design defect claim are clearly distinct and separable. A marketing defect is found if the lack of adequate warnings or

---

[4] Plumettaz's Motion should be **GRANTED** in this regard in light of Plaintiffs' Response. *See* n.3, *supra*.
[5] Plumettaz and Dixon's Motions are largely identical with respect to this issue. (*Compare* Dkt. No. 22 ¶¶ 22–25 *with* Dkt. No. 30 ¶¶ 22–24). Accordingly, the Court addresses Defendants' arguments collectively while only citing to Plumettaz's brief in this section.

> instructions renders an otherwise adequate product unreasonably dangerous. A design defect focuses on a defect in the product itself, and whether safer designs for the product were available." *Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 881 (Tex. App. 2006). Plaintiffs do not allege that the lack of adequate warning rendered the otherwise adequate GMC Envoy unreasonably dangerous, but rather that GMC failed to warn of the danger created by the alleged manufacturing and design defects. The aim of a marketing defect claim is to impose liability where the failure to warn itself caused a product to be unreasonably dangerous. *See Ethicon Endo-Surgery, Inc. v. Meyer*, 249 S.W.3d 513 (Tex. App. 2007). Plaintiffs here have alleged only that GM failed to warn of unreasonable danger created by the vehicle's alleged manufacturing and design defects, and they have therefore failed to state a claim for marketing defect.

*Barragan*, 2015 WL 5734842, at *6. The Court finds that Plaintiffs' allegations on this score are akin to those in *Barragan*. Plaintiffs' allegations are that "Defendant PLUMETT failed to adequately warn that the compressor at issue **had the potential to overload pressure and uncouple** certain hose closure mechanisms which were **not manufactured to withstand** the pressure created by PLUMETT's machine." (Dkt. No. 18 ¶ 26) (emphasis added). The emphasized portions of Plaintiffs' allegations illustrate that Plaintiffs are pointing to the manufacture and design defects themselves as giving rise to the marketing defects. Such is impermissible under Texas law. *See Barragan*, 2015 WL 5734842, at *6. Accordingly, the Court finds that Defendants' Motions should be **GRANTED** in this regard.

    **D.**    **Plumettaz's "Innocent Seller" Defense**[6]

Plumettaz argues that Plaintiffs failed to plead an exception to the "Innocent Seller" defense under Tex. Civ. Prac. & Rem. Code. § 82.003(a) ("Section 82.003(a)"). (Dkt. No. 22 ¶ 26). Plaintiffs respond that "nothing in Rule 8 requires a Plaintiff to plead facts anticipating each affirmative defense raised by a Defendant, [so] Plaintiffs' failure to specifically pled an exception to the Innocent Seller Defense should have no bearing on whether their claims survive Defendant's 12(b)(6) Motion." (Dkt. No. 29 at 7). Plaintiffs therefore acknowledge that they have failed to

---

[6] Dixon did not assert this argument because it is a manufacturer. (*See* Dkt. No. 18 ¶ 29).

plead any facts showing that one of the exceptions in Section 82.003(a) applies to Plumettaz. The Fifth Circuit recently held that Section 82.003(a) is not an affirmative defense, but rather a cause of action against a non-manufacturer. *George v. SI Group, Inc.*, 36 F.4th 611, 620 n.5 (5th Cir. 2022) ("Subchapter 82.003 is not an affirmative defense. It is a cause of action under the substantive law of products liability in Texas."). Accordingly, Plaintiffs' omission is fatal to their claim. Although Plumettaz cites a single case from 2005 where a court dismissed claims for such an omission, the *George* case was not decided until June 3, 2022—the day Plumettaz filed its reply brief.[7] In view of the foregoing, Plumettaz's Motion should be **GRANTED** in this regard but Plaintiffs will be given leave to amend their complaint as to Plumettaz in view of the Fifth Circuit's decision in *George*.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, Dixon's Motion is **GRANTED** with respect to Plaintiffs' marketing defect claim. Dixon's Motion is **DENIED** in all other respects. Plumettaz's Motion is **GRANTED** with respect to Plaintiffs' manufacturing defect claim, marketing defect claim, and Plumettaz's "Innocent Seller" defense.

Accordingly, it is **ORDERED** that Plaintiffs' marketing defect claims against Defendants are **DISMISSED-WITHOUT-PREJUDICE**. Additionally, Plaintiffs' manufacturing defect claim against Plumettaz is **DISMISSED-WITHOUT-PREJUDICE**. Finally, all of Plaintiffs' claims against Plumettaz are **DISMISSED-WITHOUT-PREJUDICE** in light of Section 82.003(a) barring Plumettaz's liability under the Fifth Circuit's recent holding in *George*.

---

[7] The Court located this decision on its own. Neither party filed a notice of supplemental authority regarding the *George* case. The Court reminds litigants of their duty to inform the Court of new authority relevant to pending motions.

9

However, Plaintiffs may file an amended complaint setting forth allegations regarding exceptions to Section 82.003(a) within fourteen (14) days from the date of this Order.

**So ORDERED and SIGNED this 12th day of July, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE